**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

FARRON KETTERMAN                          :

    Petitioner                              :

v                                         :          Civil Action No. JFM-08-752

BOBBY SHEARIN                             :
and DOUGLAS F. GANSLER[1]

                                          :

    Respondents

**MEMORANDUM**

Before the court is a petition for writ of habeas corpus filed March 24, 2008, by Maryland

prisoner Farron Ketterman (Paper No. 1), Ketterman's supplement thereto (Paper No. 17),  the

State's substantive responses and exhibits filed in connection therewith (Paper Nos. 15 and 33), and

Ketterman's correspondence relating thereto.  Paper Nos. 32, 34-36.  After reviewing these papers,

the court finds no need for an evidentiary hearing.  *See* Rule 8(a), Rules Governing Section 2254

Cases in the United States District Courts; *see also* 28 U.S.C. § 2254(e)(2).  For reasons set forth

below, the court denies relief and dismisses the petition with prejudice.

**The Crime**

In December of 2004, recent Salisbury University graduates Travis Gilbert, Anthony

Zucconi, and Steven Black were sharing a single-family rancher at 426 Washington Street in

Salisbury when their home was burglarized.  Information adduced at trial, as summarized up by the

Court of Special Appeals of Maryland, revealed the following:

> At [Ketterman's] trial in January of 2006, Gilbert testified that he had gone
> home to Baltimore for Christmas and returned to the Washington Street residence on

---

[1]The Attorney General of Maryland, Douglas F. Gansler, is the proper party respondent.  Mr. Gansler shall
be substituted for Diane Keller, a member of his staff.

December 28, 2004, between 2:30 and 3:00 p.m.  Gilbert recalled that he dropped off his laptop computer and some Christmas presents at the residence, but did not stay there long as he had to go to work by about 4:00 p.m.  Black and Zucconi were still away and the doors to their rooms were closed.  Gilbert did not notice anything amiss and left the residence shortly after 3:00 p.m.

At approximately 11:00 p.m., Gilbert returned to his residence and saw that the door to Black's bedroom was open and that his bedroom light was on.  Gilbert entered the residence and noticed that his laptop computer, which he valued at $1,500, was gone, that his clothes had been thrown out of his dresser, and that the box for his laptop had been moved from the top shelf of his closet to the bedroom floor.  Also missing from Gilbert's bedroom were his CDs, $120 in change, $300 in cash that he had kept in a bag, a computer case, and some shirts.  Gilbert called Black, who stated that he had not returned to the Washington Street residence, then he called the police.

After the police arrived, Gilbert walked around the house with the officers and noticed that the air conditioner in Zucconis' room had been "pushed in" and was "teetering" on the windowsill.  In addition, the computer monitor, which was normally on Zucconi's desk, was on the floor, and there was mud on the floor and on the bed.  Gilbert also determined that Zucconi's DVD player was missing from the living room.

Regarding access to the residence, Gilbert testified that he and his roommates "all hung out with the same people."  Gilbert stated that they had the same group of friends, and did not throw parties where people would just show up at their residence.

The next day, December 29, 2004, Black and Zucconi returned to the Washington Street residence.  Zucconi testified that, upon his return, he discovered that the following items that belonged to him were gone: the change that he had placed in a cup; a Sony laptop computer, which he valued at $800; a leather jacket, valued at $200; a Kodak digital camera, valued at $180; a Sony Play Station, valued at $150; a DVD player, valued at $50; DVDs, valued at $80; and a Sony stereo receiver, valued at $150.  Zucconi also stated that the three roommates "all hang out together," although they each had friends from home.

Black testified that, upon his return, he found that his bedroom had been "ransacked[.]" He then determined that the following items were missing: (1) a beard trimmer; (2) a few t-shirts; (3) a pair of pants; (4) a video camera; (5) a cell phone; (6) a DJ mixer; (7) a flashlight; (8) a silver chain with a cross; (9) and some loose change.  He placed the total value of these items at $1,125.  Black also noticed that a black ceramic jar, which he kept in his room to hold thumbtacks, screws, and paper clips, had been moved, so he took it to the police.

Gilbert, Zucconi, and Black testified that they did not know appellant, that they had never seen appellant before, that they had never seen appellant in their house, that they had never given appellant permission to enter their residence, and that they had never given appellant permission to take their property.

Detective Larry Jones dusted the black ceramic jar, lifted the latent fingerprints, and put them onto latent print cards. James Simms, an expert on fingerprints, compared the prints taken from the black jar with appellant's known prints. He determined that two prints matched appellant's left middle and little fingers.

On January 24, 2005, at 11:30 a.m., Detective Dana Peterson assisted in the execution of a search warrant for appellant's address at 511 East Lincoln Avenue.* None of the items taken from the Washington Street residence were found in appellant's house. However, the detective testified that, from appellant's bedroom, the police recovered some handwritten notes, which stated, in part:

> [O]ne, go rob houses, cars, niggaz, businesses, streets.
>
> * * *
>
> Break in houses and get money.
>
> * * *
>
> Work, sell drugs, play cards, shoot dice, rob niggaz, houses, cars, stores, get guns.

Detective Schejn Oliphant testified that he received a letter from appellant dated February 19, 2005, and postmarked February 22, 2005. In the letter, appellant indicated that Anthony Harmon had committed the offenses for which appellant had been charged. Appellant listed various items Harmon had taken during the burglaries, stated that the detective should search Harmon's residence for those items, and asked that the detective then contact appellant at the detention center.

On March 8, 2005, Detective Oliophant met with appellant and advised him of his rights. After being advised of his rights and indicating that he understood those rights, appellant agreed to make a statement outside the presence of an attorney. During the ensuing conversation, appellant admitted that he had been at the residence at 426 Washington Street and assisted in burglarizing the residence.

_____

*Evidence was presented that Lincoln Avenue was one block away from Washington Street.

Paper No. 15, Exhibit 1 at 1-5.

**Procedural History**

Following a bench trial in the Circuit Court for Wicomico County, Ketterman on July 26, 2005, was convicted of first-degree burglary and three counts of theft over $500 and sentenced to 18 years for the burglary, five years consecutive for one of the theft counts, and concurrent five year sentences for the remaining convictions..  Paper No. 33, Exhibit 5 at 123, 131.

On appeal, Ketterman argued that the trial court erred (1) in denying his motion to represent himself; (2) in denying his request for a continuance so that he could obtain new counsel; (3) by ruling that his statement to the detective was not taken in violation of *Edwards v. Arizona*;[2] (4) in convicting him based on insufficient evidence; and (5) in convicting him of three counts of theft. *Id*., Exhibit 6.  On December 21, 2007, the Court of Special Appeals reversed two of the three theft convictions but otherwise affirmed the trial court's judgment.  Paper No. 15, Exhibit 2 at 29.  His pro se request for certiorari review of his claim concerning insufficiency of the evidence was denied on April 11, 2008.  Paper No. 33, Exhibits 8 and 9.

In January of 2008, Ketterman initiated post-conviction proceedings in the Circuit Court for Wicomico County,.  Paper No. 15, Exhibit 1 at 11.  The petition, as supplemented, included a plethora of claims, including an allegation that (1) appellate counsel failed to submit an appeal brief and (2) the evidence was insufficient to support his conviction.

Following a hearing, the post-conviction court granted Ketterman's request to file a belated motion to modify and a belated application for review of sentence and otherwise denied relief in an opinion dated November 18, 2008. *Id*., Exhibit 4.  Ketterman did not seek leave to appeal the post-conviction court's decision.  He indicates that he did not receive the November 18, 2008 decision.

---

[2]*Edwards v. Arizona*, 451 U.S. 477 (1981).

Paper Nos. 32 and 35.  Assuming this to be true, the court notes that Ketterman does not indicate

any intention to request permission to file a belated request to seek leave to appeal.

Ketterman now raises the following claims in support of his federal habeas corpus petition:

(1)      He was denied effective assistance of appellate counsel on direct appeal where
         counsel failed to submit an appeal brief; and

(2)      The evidence was insufficient to support his convictions.

### Threshold Considerations

### Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), those petitioning for federal habeas corpus relief

must first exhaust each claim by pursuing remedies available in state court.  This exhaustion

requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction

to consider the claim.  *See* 28 U.S.C. §§ 2254(b)-( c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838,

848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  In Maryland, this may be

accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari*

to the Court of Appeals) and with other claims by way of  a post-conviction petition, followed by

petitioning the Court of Special Appeals for leave to appeal.  Ketterman no longer has any state

direct review or collateral review remedies available to him with respect to the claims raised in this

court.  Thus, his claims will be considered exhausted for the purpose of federal habeas corpus

review.

### Timeliness

Respondents do not contend - and the record does not show - that Ketterman's petition is

time-barred.

**Procedural Default**

Where a petitioner has failed to present a claim to the highest state court with jurisdiction

to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct

appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman*

*v. Thompson*, 501 U. S. 722, 749-50 (failure to note timely appeal);  *Murray v. Carrier*, 477 U. S.

478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972)

(failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md.

1982) (failure to seek leave to appeal denial of post-conviction relief).  Thus, claims which have

never been presented in the state courts--or claims which were not exhausted properly in the state

courts–will not be examined on the merits if review of the claims in state court would be barred by

state procedural rules.  *See Johnson v. Maryland*, 915 F.2d 892, 895 (4th Cir. 1990).

The bar, however, is not absolute.  In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the

Supreme Court held that consideration of a claim in a petition for habeas corpus can be barred by

failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the

failure and prejudice resulting from the failure.  *See also Murray*, 477 U.S. at 495; *Engle v. Isaac*,

456 U.S. 107, 129 (1982).

Even if a petitioner cannot show cause and prejudice to excuse procedural default, a court

must still consider whether it should reach the merits of the petitioner's claims.  To that end, in an

effort to "balance the societal interests in finality, comity, and conservation of scarce judicial

resources with the individual interest in justice that arises in the extraordinary case," *Schlup*, 513

U.S., at 324, 115 S.Ct. 851, the Supreme Court has recognized a miscarriage-of-justice exception.

Thus, in appropriate cases, "the principles of comity and finality that inform the concepts of cause

and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' "

*House v. Bell*,  547 U.S. 518, 536 (2006), citing *Murray, supra*, at 495 (quoting *Engle*, supra, at

135).  This miscarriage of justice standard is directly linked to innocence.  *Schlup*, 513 U.S. at 320.

Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must

pass before a court may consider constitutional claims which are defaulted.  *Id*. at 315.  The

miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has

probably resulted in the conviction of one who is actually innocent."  *Murray*,  477 U. S. at 496.

### Standard of Review

Title 28 § 2254(d) provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

In *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), the Supreme Court characterized

§ 2254(d) as a "highly deferential standard for evaluating state court rulings."  In *Williams v. Taylor*,

529 U.S. 362, 407-08 (2000), Justice O'Connor, speaking for the majority, further elucidated:

> Section 2254(d)(1) places a new constraint on the power of a federal habeas court to
> grant a state prisoner's application for a writ of habeas corpus with respect to claims
> adjudicated on the merits in state court.  Under Section 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied -- the state-court
> adjudication resulted in a decision that (1) "was contrary to...clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of...clearly established Federal law, as

determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-413. Justice O'Connor indicated that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States'...refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.

Furthermore, she indicated that:

[u]nder Section 2254(d)(1)'s 'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

*Id*. at 411.  In other words, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id*. at 410.  A state court decision involves an "unreasonable application" of Supreme Court precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id*. at 407-08, or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled."  *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000); *see also Booth v. Nuth*, 288 F.3d 571 (2002).[3]

_____

[3]A decision is contrary to the Supreme Court's clearly established precedents if the state court applied a rule that contradicts the governing law set forth in the Court's cases, or if it confronted a set of facts that is materially indistinguishable from a decision of the Court but reached a different result. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). A decision constitutes an unreasonable application of the Court's clearly established precedents if the state court applied the Court's precedents to the facts in an objectively unreasonable manner. *Id.* In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas

The Court reaffirmed and applied these standards in an ineffective assistance of counsel

context in *Bell v. Cone*, 535 U.S.685 (2002).   It explained:

> For respondent to succeed, however, he must do more than show that he would have
> satisfied *Strickland's* test if his claim were being analyzed in the first instance,
> because under § 2254(d)(1), it is not enough to convince a federal habeas court that,
> in its independent judgment, the state-court decision applied *Strickland* incorrectly.
> *See Williams, supra*, at 411.   Rather, he must show [the state court] applied
> *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id*. at 698-9.

"The federal habeas statute dictates a highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt. The required

deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v.

Washington,* 444 F.3d 295, 299 (4th Cir. 2006) (internal quotation marks and citation omitted).  Thus,

where the state court has adjudicated a claim on the merits, federal habeas relief is appropriate only

if the state court's judgment resulted in a decision that is "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "based on an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding." 28 U.S.C. § 2254(d); *see also Green v. Johnson*, 515 F.3d 290 (4th

Cir. 2008).

In reviewing Ketterman's attack on his state court conviction, the court presumes that factual

determinations made by the state court are correct.  Ketterman bears the burden of rebutting this

presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### Ineffective Assistance of Appellate Counsel

---

petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

Ketterman's claim concerning the attorney who represented him on direct appeal is not a

model of clarity.  On post-conviction review, Kettmern argued that "all decisions decided on direct

appeal were denied on 12/22/07 without merit with an unreported opinion because the case was

never even heard because my appellate attorney never turned in a copy of my appeal brief."  Paper

No. 15, Exhibit 3, Attachment of July 14, 2008, at 4.  While there is a strong argument to be made

that the issue is procedurally defaulted,[4] the undersigned, in an abundance of caution, shall examine

the merits of the claim.

Criminal defendants are, in fact, entitled to the effective assistance of appellate counsel on

a first appeal that is guaranteed by the State. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983)

(appellate counsel need not assert every non-frivolous claim suggested by defendant on appeal). [5]

Nothing in the record suggests that Ketterman did not receive effective appellate counsel.

Ketterman has pointed to no particular aspect of appellate counsel's performance that was deficient,

merely that the appellate court did not hold a hearing in the matter and the appellate court's written

decision was unpublished. As noted by the post-conviction court during the November 10, 2008

hearing:

> And I will note, Mr. Ketterman today indicates that he did not receive a
> hearing on the merits on the appeal, I gather perhaps because the decision was an
> unreported one, and I gather from Mr. Ketterman's comments that he thinks
> unreported means that it was not a decision on the merits, but all that means is
> that it's not reported in the Maryland Appellate Reports or not published in the
> Maryland Appellate Reports and that it would not provide authority for the
> disposition of other cases in the future, but it's certainly binding and controlling

---

[4]As previously noted, Ketterman indicates he did not seek leave to appeal the denial of post-conviction
relief,  claiming he did not receive timely notice of the decision.

[5] "There is, of course,  no constitutional right to an appeal, but in *Griffin v. Illinois*, 351 U.S. 12, 18 (1955),
and *Douglas v. California*, 372 U.S. 353 (1963), the Court held that if an appeal is open to those who can pay for it,
an appeal must be provided for an indigent. *Jones v. Barnes*, 463 U.S. at 751.

as to this particular case and those issues.

Paper No. 15, Exhibit 4 at 3.   This finding is, of course, supported by the record.  Ketterman simply

has not presented any allegation sufficient to support even a suspicion that appellate counsel was

deficient in representing him.

**Sufficiency of the Evidence**

Ketterman contends the evidence was not sufficient to support his convictions, as (1) none

of the stolen property was recovered; (2) several fingerprints other than his were also found on a

glass jar; and (3) a state's witness testified that Ketterman admitted burglarizing a different address,

436 Washington Street, rather than 426 Washington Street.  These arguments were examined by the

Court of Special Appeals on direct appeal and rejected:

> Appellant claims that the evidence was insufficient to sustain his convictions
> because his residence was searched, but none of the stolen items were found there.
> He asserts that although the notes found in his house refer to an intent to rob houses,
> they did not refer to robbing the Washington Street residence, nor was there evidence
> regarding when the notes were written.  Further, appellant contends that Detective
> Oliphant testified that appellant had admitted to burglarizing the residence at 436
> Washington Street, but Gilbert, Black, and Zucconi testified that the address of their
> residence was 426 Washington Street.  He also alleges that the fingerprint evidence
> was not coupled with sufficient evidence of other circumstances to reasonably
> exclude the hypothesis that the print was impressed upon the black ceramic jar
> at a time other than that of the crime and was thus insufficient to establish his
> criminal agency.
>
> "The standard for appellate review of evidentiary sufficiency is whether,
> after viewing the evidence in the light most favorable to the prosecution, any
> rational trier of fact could have found the essential elements of the crime beyond
> a reasonable doubt."  *State v. Smith*, 374 Md. 527, 533 (2003); *see Jackson v.
> Virginia*, 443 U.S. 307, 313, 318-19 (1979).  We give "'due regard to the
> [fact finder's] finding of facts, its resolution of conflicting evidence, and,
> significantly, its opportunity to observe and assess the credibility of witnesses.'"
> [citations omitted].
>
> "It is generally recognized that fingerprint evidence found at the scene
> of a crime must be coupled with evidence of other circumstances tending to

-11-

reasonably exclude the hypothesis that the print was impressed at a time
other than that of the crime." *McNeil v. State*, 227 Md. 298, 300 (1961).   In
*Lawless v. State*, 3 Md. App. 652, 659 (1968), this Court construed *McNeil*
to require a consideration of "circumstances such as the location of the print,
the character of the place or premises where it was found and the accessibility
of the general public to the object on which the print was impressed." [Citations
omitted].

> Here, appellant's fingerprints were found on the ceramic jar that Black
kept in his room.  Upon Black's return to the Washington Street residence, he
noticed it had been moved from the place where he normally kept it.  In
addition, Gilbert, Black, and Zucconi all testified that they did not know appellant,
that they had not given him permission to enter their residence, that they had
never seen appellant before, that they had never seen appellant in their house,
and that they had never given appellant permission to take their property.
Moreover, evidence was also presented that the roommates did not give open-
house type parties and that they basically had the same friends.

> In addition, appellant admitted to Detective Oliphant that he had been at
the residence at 436 Washington Street and had assisted in burglarizing that
residence.  Although Detective Olipant testified to the incorrect address since
Gilbert, Black, and Zucconi stated that they lived at 426 Washington Street, the
detective also testified that he had discussed with appellant the burglary in which
his fingerprints had been identified.  Detective Oliphant then stated that appellant
had admitted that he had been in the residence at 426 Washington Street.
Accordingly, the trial court was not clearly erroneous in concluding that
appellant confessed to participating in the burglary where his fingerprints were
found.  The evidence was sufficient to support appellant's conviction.

Paper No. 15, Exhibit 2 at 25-28.  As noted by the appellate court, the standard to be applied is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt as required

by *Jackson v. Virginia*, 443 U.S. at 319.  The evidence clearly supports the conviction under

Maryland law and does not run afoul of *Jackson* and its progeny;[6] accordingly, Ketterman is not

entitled to relief on this ground.  The findings of the trial court and appellate court are supported in

---

[6]*See, e.g., Wright v. West*, 505 U.S. 277, 296-97 (1992) (deference owed to trier of fact; constitutional
sufficiency review limited, with all evidence to be considered in light most favorable to prosecution).

the record and survive scrutiny under 28 U.S.C. § 2254(d).

Based on the foregoing analysis, habeas corpus relief is denied.  A separate order follows.


Date: July 20, 2009                                    /s/
                                                       J. Frederick Motz
                                                       United States District Judge